UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT AKRON

| | |
|---|---|
| CHRISTIAN LEGG, individually and on behalf of all others similarly situated,<br><br>v.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY | Case No. 5:22-cv-00846<br><br>FLSA/VOWA/VPWL Collective Action<br><br><br><br>Jury Trial Demanded |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, The Goodyear Tire & Rubber Company's ("Goodyear") timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Goodyear's organization.

3. As a result, Goodyear's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked after the onset of the Kronos hack.

4. Christian Legg is one such Goodyear worker.

5. Goodyear could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. Instead, Goodyear pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

7. Goodyear made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8. After significant delay, Goodyear made payment of some of these outstanding wages. However, portions of these earned wages remain unpaid.

9. Goodyear's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Goodyear's failure to pay wages, including proper overtime, on time and in full for all hours worked to its workers in Virginia violates the Virginia Overtime Wage Act (VOWA), Va. Stat. Ann. § 40.1-29.2 and the Virginia Payment of Wage Law (VPWL), Va. Stat. Ann. § 40.1-29.

11. Legg brings this lawsuit to recover these unpaid overtime wages and other damages owed by Goodyear to him and Goodyear's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Goodyear's decision to make its own non-exempt employees workers bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by Goodyear to all these workers, along with the penalties, interest, and other remedies provided by federal and Virginia law.

**JURISDICTION & VENUE**

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Goodyear is headquartered in this District.

## PARTIES

16. **Plaintiff Christian Legg** is a natural person.

17. Legg was, at all relevant times, an employee of Goodyear.

18. Legg worked for Goodyear from September 2021 to March 2022.

19. During and since December 2021, Legg performed work for Goodyear in Virginia.

20. Legg represents at least two groups of similarly situated Goodyear workers.

21. Legg represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Goodyear (including its subsidiaries and alter egos) who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22. Legg represents a collective of similarly situated workers under Virginia law pursuant to the VOWA and the VWPL, Va. Stat. Ann. § 40.1-29(J). This "Virginia Collective" is defined as:

> **All current or former non-exempt employees of Goodyear (including its subsidiaries and alter egos) who worked in Virginia at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

23. Throughout this Complaint, the FLSA Collective and Virginia Collective members are referred to jointly as the "Similarly Situated Workers."

24. **Defendant The Goodyear Tire & Rubber Company ("Goodyear")** is a foreign corporation.

25. Goodyear is headquartered in this District.

26. Goodyear's headquarters are located within Summit County, Ohio.

27. Goodyear may be served by service upon its registered agent, **Corporation Service Company, 3366 Riverside Dr., Ste. 103, Upper Arlington, OH 43321**, or by any other method allowed by law.

28. Goodyear's subsidiaries and alter egos include, but are not limited to:

- Cooper Tire & Rubber Co.
- Dunloop Tires
- Goodyear Auto Service Center
- Goodyear Chemical
- Just Tires
- Kelly Tires

Goodyear Corporate, Our Brands & Products, https://corporate.goodyear.com/us/en/about/our-brand-and-products.html (last accessed May 19, 2022).

29. At all relevant times, Goodyear exerted operational control over its subsidiaries and alter egos.

30. At all relevant times, Goodyear had the authority to set pay practices for workers of its subsidiaries and alter egos.

31. At all relevant times, Goodyear substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

32. At all relevant times, Goodyear had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

33. Goodyear employed and/or jointly employed, with its subsidiaries and alter egos, Legg and the Similarly Situated Workers.

34. Goodyear and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

35. Goodyear and its subsidiaries and alter egos are joint employers for purposes of Virginia law.

36. Throughout this Complaint, Goodyear and its subsidiaries and alter egos are referred to jointly as "Goodyear."

## COVERAGE UNDER THE FLSA

37. At all relevant times, Goodyear was an employer of Legg within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

38. At all relevant times, Goodyear was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

39. Goodyear was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

40. During at least the last three years, Goodyear has had gross annual sales in excess of $500,000.

41. Goodyear was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

42. Goodyear employs many workers, including Legg, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

43. The goods and materials handled, sold, or otherwise worked on by Legg and other Goodyear employees and that have been moved in interstate commerce include, but are not limited to, automobiles, tires, and automotive equipment.

## FACTS

44. Goodyear manufactures, sells, and services tires.

45. Goodyear employs 72,000 people worldwide. Goodyear Corporate, About, https://corporate.goodyear.com/us/en/about.html (last visited May 19, 2022).

46. Many of Goodyear's U.S. employees are non-exempt hourly and salaried workers.

47. Since at least 2021, Goodyear has used timekeeping software and hardware operated and maintained by Kronos.

48. On or about December 11, 2021, Kronos was hacked with ransomware.

49. The Kronos hack interfered with the ability of its customers, including Goodyear, to use Kronos's software and hardware to track hours and pay employees.

50. For at least a portion of time following the Kronos hack, Goodyear failed to keep accurate track of the hours that Legg and Similarly Situated Workers worked.

51. Instead, Goodyear has used various methods to estimate the number of hours Legg and Similarly Situated Workers work in each pay period.

52. For example, Goodyear issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

53. As a result of Goodyear's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

54. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

55. Legg is one of the thousands of employees affected by these pay and timekeeping practices.

56. Instead of paying Legg for the hours he actually worked (including overtime hours), Goodyear simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Legg's actual hours worked and regular pay rates, in multiple workweeks.

57. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

58. Goodyear knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

59. Goodyear knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

60. Goodyear could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

61. Instead of accurately tracking hours and paying employees their overtime, Goodyear decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

62. It was feasible for Goodyear to have its employees and managers report accurate hours so they could be timely paid the full and correct amounts of money they were owed for the work they did for the company.

63. But Goodyear chose not to do that.

64. In other words, Goodyear pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to

those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

65. Legg is just one of the many Goodyear employees who had to shoulder the burden of this decision by Goodyear.

66. Legg was a non-exempt hourly employee of Goodyear.

67. Legg regularly worked over 40 hours per week for Goodyear.

68. Legg's normal, pre-Kronos hack hours are reflected in Goodyear's records.

69. Since the Kronos hack, Goodyear has not paid Legg on time, if at all, for his actual hours worked each week.

70. Since the hack took place, Goodyear has not been accurately recording the hours worked by Legg and its other workers.

71. Goodyear was aware of the overtime requirements of the FLSA.

72. Goodyear nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Legg.

73. Goodyear's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

74. The full overtime wages owed to Legg and the Similarly Situated Workers became "unpaid" when the work for Goodyear was done—that is, on Legg and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

75. At the time Goodyear failed to pay Legg and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Goodyear became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

76. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

77. Any payment made by Goodyear to Legg or the Similarly Situated Workers that Goodyear may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

78. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

79. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Goodyear's acts and omissions resulting in the unpaid wages in the first place.

80. Legg and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by Goodyear under federal, North Carolina, and Virginia law.

### COLLECTIVE ACTION ALLEGATIONS—FLSA

81. Legg incorporates all other allegations.

82. Numerous individuals were victimized by Goodyear's patterns, practices, and policies, which are in willful violation of the FLSA.

83. Based on his experiences and tenure with Goodyear, Legg is aware that Goodyear's illegal practices were imposed on the FLSA Collective.

84. The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

85. These employees are victims of Goodyear's unlawful compensation practices and are similarly situated to Legg in terms of the pay provisions and employment practices at issue regarding the FLSA Collective.

86. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

87. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

88. Goodyear's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

89. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## COLLECTIVE ACTION ALLEGATIONS—VIRGINIA LAW

90. Legg incorporates all other allegations.

91. Numerous individuals were victimized by Goodyear's patterns, practices, and policies, which are in knowing and willful violation of the VOWA and the VWPL.

92. Based on his experiences and tenure with Goodyear, Legg is aware that Goodyear's illegal practices were imposed on the Virginia Collective.

93. The Virginia Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

- 10 -

94. The Virginia Collective members were not paid their full wages each regular payday for the work they perfomed for Goodyear.

95. These employees are victims of Goodyear's unlawful compensation practices and are similarly situated to Legg in terms of the pay provisions and employment practices at issue regarding the Virginia Collective.

96. The workers in the Virginia Collective were similarly situated within the meaning of the VOWA.

97. Any differences in job duties do not detract from the fact that these non-exempt workers were entitled to overtime pay under the VOWA

98. Goodyear's failure to pay overtime compensation at the rates required by the VOWA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the Virginia Collective members.

99. The workers in the Virginia Collective were similarly situated within the meaning of the VWPL.

100. Any differences in job duties do not detract from the fact that these workers were entitled to their earned wages on their regular paydays, as required by the VPWL.

101. Goodyear's failure to pay wages within the time required under the VPWL result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the Virginia Collective members.

102. The Virginia Collective should be notified of this action and given the chance to join pursuant to Va. State. Ann. § 41.1-29(J).

**FIRST CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA**
**AS TO LEGG AND THE FLSA COLLECTIVE**

103. Legg incorporates all other allegations.

104. By failing to pay Legg and the FLSA Collective members overtime at 1.5 times their regular rates when the payments were due, Goodyear violated the FLSA. 29 U.S.C. § 207(a).

105. Goodyear owes Legg and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

106. Likewise, Goodyear owes Legg and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

107. Goodyear knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

108. Because Goodyear knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Goodyear owes these wages for at least the past three years.

109. Goodyear's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

110. Because Goodyear's decision not to pay overtime was not made in good faith, Goodyear also owes Legg and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

111. Accordingly, Legg and the FLSA Collective members are entitled to their full overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION— VIOLATIONS OF THE VOWA AS TO LEGG AND THE VIRGINIA COLLECTIVE

112. Legg incorporates all other allegations.

113. The conduct alleged in this Complaint violates the VOWA, Va. Stat. Ann. § 40.1-29.2.

114. At all relevant times, Goodyear has been an "employer" within the meaning of the VOWA, Va. Stat. Ann. § 40.1-29.2(A).

115. At all relevant times, Goodyear employed Legg and the other Virginia Collective members as "employees" within the meaning of the VOWA, Va. Stat. Ann. § 40.1-29.2(A).

116. The VOWA requires an employer like Goodyear to pay overtime to all non-exempt employees. Va. Stat. Ann. § 40.1-29.2(B).

117. Legg and the other Virginia Collective members are non-exempt employees who are entitled to be paid overtime for all hours worked over 40 in a workweek at a rate of no less than 1.5x their regular rate. Va. Stat. Ann. § 40.1-29.2(B).

118. Within the applicable limitations period, Goodyear had a policy and practice of failing to pay proper overtime to the Virgnia Collective members for their hours worked in excess of 40 hours per week.

119. As a result of Goodyear's failure to pay proper overtime to Legg and the Virginia Collective members for work performed in excess of 40 hours in a workweek at the time the payments were due, Goodyear violated the VOWA.

120. Because PepsiCo's decision not to pay overtime wages on time and in full was made knowingly, PepsiCo also owes Smith and the Virginia Collective members an amount three times the unpaid wages as liquidated damages. VOWA, Va. Stat. Ann. § 40.1-29(J).

121. Smith and the Virginia Collective members are entitled to recovery their unpaid wages at 1.5x their regular rates of pay, liquidated damages in an amount equal to 2x the

unpaid wages, attorney's fees, costs, interest, and all other legal and equitable relief provided by the VOWA.

### THIRD CAUSE OF ACTION— VIOLATIONS OF THE VPWL AS TO LEGG AND THE VIRGINIA COLLECTIVE

122. Legg incorporates all other allegations.

123. The conduct alleged in this Complaint violates the VPWL, Va. Stat. Ann. § 40.1-29.

124. At all relevant times, Goodyear has been an "employer" within the meaning of the VPWL, Va. Stat. Ann. § 40.1-28.9(A).

125. At all relevant times, Goodyear employed Legg and the other Virginia Collective members as "employees" within the meaning of the VPWL, Va. Stat. Ann. § 40.1-28.9(A).

126. The VPWL requires an employer like Goodyear to pay the full amount of wages due to each salaried employee at least once each month on regular paydays. Va. Stat. Ann. § 40.1-29(A).

127. The VPWL requires an employer like Goodyear to pay the full amount of wages due to each hourly employee at least once even two weeks or twice in each month on regular paydays. Va. Stat. Ann. § 40.1-29(A).

128. Goodyear knew it had to pay Legg and the Virginia Collective members all wages due within the time provided by the VWPL, but did not do so.

129. Within the applicable limitations period, Goodyear had a policy and practice of failing to pay all wages due within the time period allowed under the VWPL.

130. As a result of Goodyear's failure to timely pay all wages due to Legg and the Virginia Collective members, Goodyear violated the VWPL.

131. Legg and the Virginia Collective members are entitled to their unpaid wages, liquidated damages of twice the amount of unpaid wages, attorney's fees, costs, penalties, interest, and all other legal and equitable relief provided by the VWPL, Va. Stat. Ann. § 40.1-29(G)-(H), (J).

**RELIEF SOUGHT**

Legg prays for judgment against Goodyear as follows:

    a.    For an order certifying a collective action for the FLSA claims;

    b.    For an order certifying a collective action for the Virgina law claims;

    c.    For an order finding Goodyear liable for violations of federal wage laws with respect to Legg and all FLSA Collective members covered by this case;

    d.    For an order finding Goodyear liable for violations of Virginia wage laws with respect to Legg and all Virginia Collective members covered by this case;

    e.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Legg and all FLSA Collective members covered by this case;

    f.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under Virginia wage laws to Legg and all Virginia Collective members covered by this case;

    g.    For an equitable accounting and restitution of wages due to Legg and all FLSA Collective and Virginia Collective members members covered by this case;

    h.    For a judgment awarding attorneys' fees to Legg and all FLSA Collective and Virginia Collective members covered by this case;

    i.    For a judgment awarding costs of this action to Legg and all FLSA Collective and Virginia Collective members covered by this case;

    j.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Legg and all FLSA Collective and Virginia Collective members covered by this case; and

    k.    For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
    **Matthew S. Parmet**
    TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**J. Corey Asay**
Ohio Bar No.: 0090203
**MORGAN & MORGAN, P.A.**
333 W. Vine St., Ste. 1200
Lexington, KY 40507
Tel:   (859) 286-8368
Fax:   (859) 286-8384
Email: casay@forthepeople.com

**Attorneys for Plaintiffs**

## JURY DEMAND

Legg demands a trial by jury on all issues.

*/s/ Matthew S. Parmet*

**Matthew S. Parmet**